SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

MARK L. KROTOSKI (CSBN 138549)
Chief, Criminal Division

C. DAVID HALL (CSBN 66081)
WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorneys
KRISTA TONGRING (NJBN 2739-96)
Trial Attorney, United States Department of Justice

   450 Golden Gate Avenue
   San Francisco, CA 94103
   Telephone: (415) 436-7168, 6959, 6829
   Fax:      (415) 436-7234
   E-mail: david.hall2@usdoj.gov
         william.frentzen@usdoj.gov
         Krista.Tongring3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RAYMON MILBURN, et al.,<br><br>    Defendants. | **No. CR 05-00167 WHA**<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE "SPECIAL FINDINGS" FROM THE INDICTMENT, AND TO STRIKE THE AMENDED NOTICES OF INTENT TO SEEK THE DEATH PENALTY (Doc. Nos. 1194 and 1196)**<br><br>Date: May 21, 2007<br>Court: Hon. William H. Alsup<br>Time: 8:00 a.m. |

The United States of America, by and through its undersigned counsel, responds to the defendants' motions to dismiss the "special findings" from the indictment, and to strike the Amended Notices of Intent to Seek the Death Penalty. This response is based upon the attached Memorandum of Points and Authorities, the files and records in this case, and any further evidence or argument that may be presented at the hearing on the motion.

| | | |
|---|---|---|
| DATED: April 6, 2007 | | SCOTT N. SCHOOLS<br>United States Attorney |
| | | MARK L. KROTOSKI<br>Chief, Criminal Division |
| | _____/S/_____<br>C. DAVID HALL<br>WILLIAM FRENTZEN<br>Assistant United States Attorneys<br>KRISTA TONGRING<br>United States Department of Justice, Trial Attorney<br>Attorneys for Plaintiff<br>United States of America | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Defendant Diaz moves to dismiss the "special findings" from the Second Superseding Indictment, and to strike the Amended Notice of Intent to Seek the Death Penalty. In so moving, defendant Diaz asserts the following deficiencies regarding the Amended Notice of Intent to Seek the Death Penalty that pertains to him (Doc. No. 1177) (Amended Diaz Notice): the notice does not provide sufficient notice as required by the Constitution and 18 U.S.C. § 3593(a); inconsistencies between the indictment and the notice must be stricken; duplicative non-statutory aggravating factors must be stricken; certain victim impact evidence will be unduly prejudicial; unadjudicated conduct of the defendant should not be permitted during the penalty phase; the obstruction of justice aggravating factor should be stricken; "leadership role in a criminal enterprise" is duplicative when "membership in a criminal enterprise" is alleged in support of the "future dangerousness" factor; and the factor of "future dangerousness" is not relevant to the penalty phase. Diaz Motion at 8-24. Similarly, defendant Fort claims the Amended Notice of Intent to Seek the Death Penalty which pertains to him is insufficient for the following reasons (Doc. No. 1176) (Amended Fort Notice): evidence to support the "victim impact" factor is inadequate; evidence to support the "obstruction of justice" factor is inadequate; evidence to support the "leadership role" factor is inadequate; evidence to support the "future

dangerousness" factor (and sub-factors) is inadequate; evidence to support the "grave risk of death to a person in addition to the victim" factor is inadequate; and evidence to support the "vulnerability of the victim" factor is inadequate.

For the reasons delineated below, each of the contentions advanced by both defendants should be denied, and with the exceptions noted below, the Amended Notices should stand. Further, this Court should be aware that the majority of the evidence the government intends to present during the penalty phase will have already been heard by the jury during the guilt phase. Finally, the government strongly believes that there is no need for an evidentiary hearing on any of the issues raised by the defendants. Such a hearing will not assist this Court in deciding the issues until the trial has concluded and all of the evidence has been submitted to the jury.

## II.

## STATEMENT OF FACTS

On November 14, 2005, a Second Superseding Indictment (Doc. No. 181) was filed charging the defendants with 3 conspiracies: a narcotics conspiracy in violation of Title 21, United States Code, Section 841; a firearms conspiracy in violation of Title 18, United States Code, Section 924(o); and a RICO conspiracy in violation of Title 18, United States Code, Section 1962(d). The indictment also alleges 18 acts committing a violent crime in aid of racketeering, in violation of Title 18, United States Code, Section 1959, 10 counts of unlawful use of a communication facility in violation of Title 18, United States Code, Section 843(b), conspiracy to commit witness tampering in violation of Title 18, United States Code, Section 1512(k), and substantive firearms and narcotics offenses in violation of Title 18, United States Code, Section 924(c) and Title 21, United States Code, Section 841, respectively. Special findings were alleged against defendant Diaz as to Counts 10, 12 and 13, and against defendant Fort as to Counts 4, 7 and 8.

Both the government and defendants have engaged in extensive briefing on the subject of the within motion, which has resulted in the issuance of two orders by this Court. The first order, filed on 1/23/07 (Doc. No. 1111) (1/23/07 Order), required the government to provide the defendants with an outline as to how it intends to prove the following items in the notices:

substantial planning and premeditation; grave risk of death to one or more persons in addition to the victim; commission of the offense in a heinous, cruel or depraved manner; victim impact evidence; participation in additional homicides; participation in additional serious acts of violence and contemporaneous criminal conduct; obstruction of justice; leadership role in a criminal enterprise; and future dangerousness. 1/23/07 Order at 6-11. The Court ordered the same regarding the gateway mental states enumerated in each notice. Id. at 11-12.

A second order was issued by the Court on 2/28/07 (2/28/07 Order)(Doc. No. 1157), some of which is pertinent to these motions. The Court stated that it would consider the following items: inconsistencies in the death notices and the indictment; duplicative non-statutory aggravating factors; whether victim impact evidence will be unduly prejudicial; the issue of unadjudicated criminal conduct; whether the factual proffer on the obstruction of justice supports the conclusion that a conspiracy existed, and that it was in furtherance of the Down Below Gang (DBG); whether "leadership role in a criminal enterprise" is duplicative of the future dangerousness sub-factor "membership in a criminal enterprise;" and whether considering the facilities and security procedures available to the government, evidence of future dangerousness is relevant during the penalty phase. 2/28/07 Order at 41-42

### III.

### ARGUMENT

A. The Amended Death Notices

As required by the 1/23/07 Order, the government filed Amended Notices on March 9, 2007. See Doc. Nos. 1176-1177. Contained in both notices were factual allegations in support of the "gateway" mental states (18 U.S.C. § 3591(a)). For example, in the Amended Diaz Notice, the government provided the following information regarding the Beverly Robinson homicide: "The defendant, after participating in the 'round up' of the victim for the possible theft of a DBG community firearm, fired his weapon at the victim. When the victim fled from the group of DBG members, the defendant pursued him with his weapon while other DBG members continued to shoot at the victim." Doc. No. 1177 at 2. These factual allegations support all four mental states.

1    Both notices provide additional support regarding the statutory aggravating factors, as well.
2 Again, the government furnished supplemental facts to support the statutory aggravating factor
3 alleged in the Robinson homicide: "A witness or witnesses will testify that the defendant and his
4 co-conspirators fired their weapons in close proximity to civilians, as well as public housing
5 units where civilians resided, causing grave risk of death to those civilians by possible stray
6 bullets." Doc. No. 1177 at 3. These facts relate to the "grave risk of harm to one or more
7 persons other than the victim" factor.
8    As to the non-statutory aggravating factors, the government delineated additional facts to
9 support the alleged factors, removed language which the Court ruled made certain factors overly
10 broad (i.e., "including, but not limited to"), directed the defendants to the indictment and
11 discovery as a means of obtaining the factual bases for certain factors, or utilized some
12 combination of the above. With regard to the victim impact factor in Count 10, the government
13 made this disclosure: "Several of the victim's family members will testify that they experienced
14 severe feelings of depression after his death. Family members received counseling. One family
15 member lost his/her job after the victim's death because he/she could not get out of bed to go to
16 work for as long as a year's time. Other family members also had difficulties working and in
17 their personal lives due to their feelings of depression. The family spent $7,000 on the funeral
18 for the victim." Doc. No. 1177 at 3. As to participation in additional homicides, the government
19 limited itself to the homicides charged in the indictment, details of which have been provided in
20 discovery. <u>See</u> e.g., Doc. No. 1177 at 3-4. Similar limitations were placed on the "participation
21 in additional acts of violence," "obstruction of justice," and "contemporaneous criminal
22 conduct" factors, i.e., the government limited itself to the crimes charged in the indictment and
23 noted that discovery had been provided. <u>See</u> e.g., Doc. No. 1177 at 7-8. Additional details were
24 provided regarding the defendants' leadership role in the enterprise: "The defendant could give
25 orders to certain members of DBG, who were expected to listen to him. He was, however,
26 expected to follow the orders of Fort, Gregory Jackson (while he was alive), and redacted
27 defendant #1, all of whom ranked higher than he in DBG hierarchy. The defendant could
28 exercise his leadership role over lesser members of DBG by directing their violent activities."

GOVERNMENT'S RESPONSE
[CR 05-00167 WHA]                    5

Doc. No. 1177 at 8-9.  A factual recitation specific to defendant Fort was included in his amended notice.  See Doc. No. 1176 at 9.

Details specific to each defendant were provided regarding their "future dangerousness." The government listed potential evidence it may use regarding the "continuing pattern of violence," such as prior arrests.  See Doc. No. 1177 at 9; Doc. No. 1176 at 9-10.  The government noted that each defendant previously had been incarcerated, and in which facilities. Id.  With regard to defendant Fort, the government stated that he had been found to have violated his probationary status.  Doc. No. 1176 at 10.  The defendants' lack of remorse was also discussed in further detail.  See Doc. No. 1177 at 9; Doc. No. 1176 at 10.  With regard to the potential for rehabilitation and membership in a criminal enterprise, the defendants were referred to previous items.  See Doc. No. 1177 at 9-10; Doc. No. 1176 at 10.

B.  Victim Impact Evidence

Defendants present two arguments with regard to victim impact evidence: that the government has not provided them with a sufficient factual basis to mount their defense; and that the potential for prejudice regarding the amount of victim impact evidence must be weighed by the Court.  Diaz Motion at 21-22; Fort Motion at 4-6.  Both defendants conclude that an evidentiary hearing is necessary to determine the type, quantity and parameters surrounding the victim impact evidence introduced during the penalty phase.  The government submits an evidentiary hearing on this issue is not necessary at this time.

As this Court has already ruled, although it "understands the *potential* for victim impact evidence to contaminate the proceedings and render the defendants' trials unfair, such concerns are premature at this time."  2/28/07 Order at 28 (emphasis in original).  This Court stated that these issues are properly addressed at the time of a penalty phase, if one does occur.  Id.  At this time, the government has presented the defendants with an idea of the types of evidence it will present. Family members will testify to their feelings of depression, grief and anxiety; their inability to work; their fear for their own safety, the therapy or counseling they sought due to the

1  death of their family member.¹  This information is more than adequate to afford the defendants
2  notice.

C.  Obstruction of Justice

The government's allegations regarding this factor are related to charges against both defendants in the indictment - Counts 14, 15, 26, 27.  The government alleges that defendant Fort participated in a conspiracy to murder two potential witnesses against him - Harry Cael, Jr. and Jamaar Jackson, and that defendant Diaz participated in the conspiracy to murder Jamaar Jackson.  These conspiracies directly relate to the activities of DBG.  Significant discovery has been produced regarding these charges, including a lengthy transcript of recorded jail phone calls during which both defendants discuss the conspiracy.  The conspiracy to murder two witnesses against him, with the assistance of defendant Diaz and other DBG members, was simply another act the members attempted to further their enterprise and ensure their members did not accept the consequences of their violent acts.

Regardless, it is the government's position that the Court should not evaluate whether this conspiracy relates to the enterprise until the facts are properly before it at trial.  Any evidentiary hearing at this time would be akin to a mini-trial that unnecessarily would waste judicial resources.  Other courts proceed in this fashion when the admission of evidence hinges upon the existence of a conspiracy.  See, e.g., Fed.R.Evid. 104 (preliminary questions); Fed.R.Evid. 801(d)(2)(E)(statements by co-conspirator); United States v. Bourjaily, 483, U.S. 171 (1987); United States v. Eubanks, 591 F.2d 513, 519, n.6 (9th Cir. 1979)("the trial judge could have conditionally admitted the challenged statements, subject to a motion to strike if the prosecution failed to establish the existence of the foundational facts").  Moreover, this Court will be better prepared to make such a determination after hearing all of the government's evidence during trial.  See United States v. McVeigh, 944 F.Supp. 1478, 1490 (D.Colo. 1996)("The court must

---

¹ Defendant Fort claims that further information is needed about the personal characteristics of the victim in order to evaluate how family members reacted to that victim's death. Fort Motion at 5.  Any family member can testify to regarding their feelings after the death of their son, brother, cousin, etc. without necessarily discussing the personal characteristics of the deceased.  While personal characteristics may be discussed, they do not have to be.

GOVERNMENT'S RESPONSE
[CR 05-00167 WHA]                                7

await the evidence, at least the trial of the counts of the indictment, before determining whether and to what extent a penalty phase jury will be allowed to consider [the substantial planning and premeditation] factor.").

D. Leadership Role in a Criminal Enterprise

Both defendants claim that the government's factual basis for this aggravating factor is insufficient. Fort Motion at 6-7; Diaz Motion at 13. However, the government laid out an outline of how it would prove the leadership roles of each defendant. This is beyond what is described in the indictment. Defendants expect the government to describe its entire case in these notices. That is not required by law; nor is it what this Court ordered the government to provide. The government's factual basis was general. These facts will be proven by specific witness testimony which, for any number of reasons, the government is not required to provide to defendants at this time. However, each defendant knows the "type" of leader the government alleges each to be: Diaz can order only some people around and only sometimes - he is obviously less of a leader than Fort, whose orders were required to be followed by DBG members. The government submits these facts are sufficient to allow the defendants to prepare for the penalty phase.[2]

E. Future Dangerousness

Both defendants claim that the amended notices are too vague to provide sufficient notice regarding future dangerousness. Diaz Motion at 13-14; Fort Motion at 7-8. As discussed throughout this memorandum, the government followed this Court's directive, and added factual allegations to support the mental states and all of the aggravating factors, including future dangerousness. These facts are sufficient to provide defendants with notice of what the government intends to present as evidence during the penalty phase. Defendants also contend that certain sub-parts are duplicative of other aggravating factors.

The future dangerousness factor is defined as a person "who represents a continuing danger to the lives and safety of other persons . . . . someone who is likely to commit criminal acts of

---

[2] This is especially true since all of the aforementioned testimony will be presented at trial, prior to any penalty phase.

violence in the future that would constitute a continuing and serious threat to the lives and safety of others." Doc. No. 1176 at 9; Doc. No. 1177 at 9. It is comprised of sub-parts which define why a defendant may be a danger in the future. These sub-parts are used to provide notice to a defendant of what types of evidence the government may use to prove the future dangerousness factor. For example, the government believes these defendants are a danger in the future because they engaged in a continuing pattern of violence, they lacked remorse, they have a low potential for rehabilitation, and they are members of a criminal enterprise. See Doc. No. 1177 at 9-10; Doc. No 1176 at 9-10. While it is true that the government will use the same or similar evidence to prove some sub-parts of this factor and certain aggravating factors, it does not follow that this factor is subsumed within those other factors. Whether or not a defendant "would constitute a continuing threat to the lives and safety of others" is not the same as "leadership in a criminal enterprise" or "participation in additional serious acts of violence." For defendants to claim that the use of sub-parts is the government's attempt to unnecessarily duplicate another aggravating factor is baseless.

The Court, in its 2/28/07 Order, asked the government why this factor is not irrelevant given the federal prison and security available to house the defendants if they were given a life sentence without the possibility of parole. 2/28/07 Order at 35-36. In this regard, the government has sought information regarding the defendants' conduct during all prior imprisonment, as well as their current imprisonment. That information is necessary to make any type of determination as to whether a prison's security procedures are sufficient to maintain the safety of other inmates. Until such information has been gathered, the government cannot make such a determination.

F. Grave Risk of Death to a Person in Addition to the Victim

Defendant Fort argues that the Court should strike this factor from Count Four because the government did not allege that the defendant knew of any risk to Baby Molex. Fort Motion at 10-11. Defendant Fort misconstrues this aggravating factor which is designed for circumstances where a defendant knowingly created a risk to persons **other than** the victim. 18 U.S.C. 3592(c)(5). Baby Molex was the victim in Count Four, so whether or not defendant Fort knew

of any risk to him is irrelevant. What is relevant is the risk to other persons, which is what the government addressed in its amended notice: "The defendant shot a gun at the victim's father and [an]other man near him outside the victim's home. These shots wounded the victim's father, narrowly missed the other man and killed the victim." Doc. 1176 at 2-3. These facts are sufficient to prove that the defendant knowingly created a grave risk of harm to others, the victim's father and the other person standing outside the Molex house, during the commission of the murder.

Defendant Diaz complains that the government's amended notice is insufficient to satisfy this Court's 1/23/07 Order. Diaz Motion at 10-11. That is not the case. The government explained that defendant Diaz shot a firearm in close proximity to civilian witnesses and public housing units. These actions are what the government contends establish that defendant Diaz put others at a grave risk of death. Although witnesses are not named, defendants are not entitled to that information at this time. However, defendant Diaz is well aware of the place at which this crime is alleged to have been committed, as well as the manner in which it is alleged to have been committed. Unfortunately, one only needs to read the newspaper or watch the news to encounter instances where innocent bystanders are injured or killed by stray bullets meant to harm others. The information given by the government is sufficient to allow defendant Diaz to defend against this factor.

G. Particular Vulnerability of the Victim

Defendant Fort maintains that the government must prove he knew of Baby Molex's age and that his age contributed to his death. Fort Motion at 11-12. This argument is only partially correct. Death penalty law requires only that the vulnerability of the victim somehow contribute to the victim's death, if for example, the victim was less able to escape. United States v. Sampson, 335 F.Supp.2d 166, 213 (D.Mass. 2004). It does not require that the defendant know of this vulnerability. Id. at 214.

With regard to Baby Molex, the government will be able to prove that, due to the fact that he was an infant at the time of the murder, he was less able to avoid the stray gunshots being fired into the house. While other adults or children might lie on the floor or seek other shelter, Baby

1 Molex was unaware that he was in mortal danger and could do nothing to prevent it. This was
2 entirely due to his age. Thus, a "nexus" exists between the death of Baby Molex and his
3 vulnerability. See United States v. Paul, 217 F.3d 989, 1001 (8th Cir.2000); United States v.
4 Minerd, 176 F.Supp.2d 424, 447 (W.D.Pa.2001).

5 H. Other Serious Acts of Violence

6 In accordance with this Court's 1/23/07 Order, the government removed over-broad language
7 from this factor and limited the serious acts of violence to those acts charged in the indictment.
8 Thus, the only acts the government intends are ones that will be adjudicated at trial. Instead of
9 providing a factual outline for these acts, the government pointed the defendants to the
10 indictment and the discovery that has been provided. This information provides them with a
11 sufficient basis with which to prepare for any penalty phase hearing.

12 Defendants cite United States v. Kaczynski, 1997 WL 716487 (E.D. Cal 1997) to support
13 their argument that a reference to discovery is insufficient notice. Diaz Motion at 12. However,
14 Kaczynski actually supports the government's position. In that case, the Ninth Circuit stated
15 "[i]n evaluating whether due process is satisfied, the Death Penalty Notice must be considered in
16 conjunction with the offenses as charged in the indictment, which can provide the requisite
17 specificity to an otherwise insufficient notice." Id. at *19. The defendants are correct that the
18 Kaczynski court found that reference to discovery provided could not substantiate a deficient
19 notice. Id. at *20. However, the Kaczynski Notice was markedly different from Diaz's and
20 Fort's Notices. Id. ("[t]he defendant has committed two other murders and numerous other
21 significant acts of violence and attempted acts of violence and has made threats of violence
22 against others."). In this case, the government refers to specific acts of violence allegedly
23 committed by the defendants, all of which are charged in the indictment and for which discovery
24 has been provided. The defendants will not be "forced to defend against these allegations for the
25 first time during the prosecutor's case-in-chief at sentencing." Id. Consequently, the Court
26 should find the government has provided sufficient notice as to this factor.

27
28

GOVERNMENT'S RESPONSE
[CR 05-00167 WHA]                                11

I.  Mental States Pursuant to 18 U.S.C. 3591(a)(2)

Defendants argue that the factual bases for the mental states alleged pursuant to 18 U.S.C. 3591(a)(2) are not adequate to provide constitutional notice.  Diaz Motion at 15-16.  Diaz further argues that because the government did not state that his actions led to the death of either Beverly Robinson or Antoine Morgan, that the facts alleged are insufficient "as a matter of law" to establish that he intentionally killed either victim.  Id.

As ordered by this Court, the government set forth the facts it intends to introduce during any penalty phase to establish at least one of the gateway mental factors.  The Court correctly noted that "[t]he four mental states in the FDPA are merely variations on the same theme.  The jury may find that the evidence supports any one of the mental states.  It would be unfair to force the government to restrict its theories before the presentation of the evidence."  3/23/07 Order at 14.  It is the government's position that the facts alleged in Diaz's and Fort's Notices are sufficient to establish any of the listed mental states.  It is the function of the jury, after hearing the evidence presented, to determine whether the government has met its burden of proving one of these mental states.  Thus, defendants argument in this regard must fail.

The second contention must also fail.  The facts presented by the government are sufficient to establish that defendant Diaz intentionally killed both Beverly Robinson and Antoine Morgan.  Unfortunately, each victim is in fact dead.  The mere fact that the government did not include words such as "these actions resulted in the death of ..." in the notice does not render it meaningless.  If the government did not believe that Diaz intentionally killed both victims, the parties would not be at this stage of the proceedings, i.e., preparing for a capital prosecution.

J.  Inconsistencies Between the Second Superseding Indictment and Notices

The government concedes that it did not allege that defendant Diaz committed the murder of Beverly Robinson in an especially heinous, cruel and depraved manner in that it involved torture and serious abuse to the victim.  The government agrees that this aggravating factor should be struck from Diaz's Notice.  As to the grave risk of harm factor, the government followed the exact wording of the statute in its amended notices.  This does not create any undue prejudice to the defendants.

**K. Impermissibly Duplicative Factors**

Defendants argue, citing United States v. Bin Laden, 126 F.Supp.2d 290, 299 fn.14 (S.D.N.Y. 2001) that the "participation in additional homicides" factor should not be alleged as to each homicide, but rather one time as to each defendant. The government has no objection to this change.

However, defendants also contend this factor is completely subsumed within the "continuing pattern of violence" and "low rehabilitative potential" sub-parts of the "future dangerousness" aggravating factor. Diaz Motion at 19-20. With this, the government does not agree. The fact that these are sub-parts indicates that the "future dangerousness" factor comprises more than the past crimes of the defendants. Thus, by definition, this factor cannot wholly subsume "participation in additional homicides." This logic similarly applies to Diaz's argument regarding "participation in serious additional acts of violence" and "leadership role in a criminal enterprise". Diaz Motion at 20-21.

Defendants claim that the victim impact factor should only be alleged one time instead of for each homicide. Diaz Motion at 20. This is meritless. Each murder victim was an individual with family members who have been harmed in specific, identifiable ways. To lump these family members into one broad category borders on the ridiculous.

**L. Unadjudicated Conduct[3]**

The government seeks to admit unadjudicated conduct of the defendants for the purposes of showing their potential for future dangerousness. In this regard, the government is attempting to put those facts which are relevant to the character of the defendant before the sentencing jury. This is entirely proper. See Barclay v. Florida, 463 U.S. 939, 967 (1983) (Stevens, J., concurring).; see also Zant v. Stephens, 462 U.S. 862, 878-79 (1983). The use of unadjudicated criminal conduct to support an aggravating factor is permissible. See United States v. Edelin, 134 F.Supp.2d 59, 76 (D.D.C. 2001)("[w]hile unadjudicated criminal activity may not be valid when used as aggravating factors, the use of unadjudicated criminal activity as information to

---

[3] The defendants' criminal records, SFPD reports related to their arrests, and other information relating to these alleged crimes have been produced in discovery.

support a finding of other aggravating factors is valid"). At the time of the penalty phase hearing, this Court must weigh the evidence presented by the government to determine whether any such evidence is more prejudicial than probative. Attempting to do so at this time, in a vacuum and without the benefit of the evidence proffered at trial or related to the other aggravating factors, would render such a balancing test meaningless.

M. Leadership Role in a Criminal Enterprise

See K.

N. Resolution of the Issues

As discussed above, it is the government's position that most of the arguments presented by the defendants are meritless. Assuming arguendo this Court finds some further deficiency in Diaz's or Fort's Notice, the government requests further leave to amend those notices. Trial is still five months away and any minor insufficiency will not deprive the defendants of their entitlement to notice of the government's intent to seek the death penalty. The government is prepared to address these issues before the Court at the Court's convenience.

## IV.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the "special findings" from the indictment, and to strike the Notices of Intent to Seek the Death Penalty should be denied.

DATED: April 6, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

_____
C. DAVID HALL
WILLIAM FRENTZEN
Assistant United States Attorneys
KRISTA TONGRING
Trial Attorney, U.S. Department of Justice

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

    I. INTRODUCTION ........................................................................................ 2

    II. STATEMENT OF FACTS .......................................................................... 3

    III. ARGUMENT .............................................................................................. 4

        A.     The Amended Death Notices ................................................... 4

        B.     Victim Impact Evidence ........................................................... 6

        C.     Obstruction of Justice ............................................................... 7

        D.     Leadership Role in a Criminal Enterprise ............................... 8

        E.     Future Dangerousness .............................................................. 8

        F.     Grave Risk of Death to a Person in Addition to the Victim .... 9

        G.     Particular Vulnerability of the Victim .................................... 10

        H.     Other Serious Acts of Violence .............................................. 11

        I.     Mental States Pursuant to 18 U.S.C. 3591(a)(2) .................... 12

        J.     Inconsistencies Between the Second Superseding Indictment and Notices ............................................................................... 12

        K.     Impermissibly Duplicative Factors ......................................... 13

        L.     Unadjudicated Conduct ........................................................... 13

        M.     Leadership Role in a Criminal Enterprise ............................... 14

        N.     Resolution of the Issues ........................................................... 14

    IV. CONCLUSION ........................................................................................... 14

TABLE OF AUTHORITIES

FEDERAL CASES

*Barclay v. Florida*, 463 U.S. 939 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Bin Laden*, 126 F.Supp.2d 290 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Edelin*, 134 F.Supp.2d 59 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Kaczynski*, 1997 WL 716487 (E.D. Cal 1997) . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. McVeigh*, 944 F.Supp. 1478 (D.Colo. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Minerd*, 176 F.Supp.2d 424 (W.D.Pa.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Paul*, 217 F.3d 989 (8th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Sampson*, 335 F.Supp.2d 166 (D.Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Zant v. Stephens*, 462 U.S. 862 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

FEDERAL STATUTES, RULES, AND GUIDELINES

18 U.S.C. § 3591(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 15

18 U.S.C. § 3593(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

18 U.S.C. 3592(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed.R.Evid. 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7