IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMON MILBURN,<br><br>Defendant.<br>                                      / | No. CR 05-00167 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR BILL OF PARTICULARS** |

**INTRODUCTION**

In this action alleging racketeering conspiracies, drug dealing and violent crime, defendant Raymon Milburn moves for a bill of particulars. For the reasons stated below, most of the requests are not justified; others are.

**STATEMENT**

On March 17, 2005, a federal grand jury sitting in San Francisco indicted Edgar Diaz, Ricky Rollins, and Don Johnson with one count of Violent Crime in Aid of Racketeering in violation of 18 U.S.C. 1959. The indictment charged that defendants were members of the Down Below Gang, a purportedly criminal organization whose members and associates engaged in violence and narcotics distribution in San Francisco (Indict't at 5–6). On June 16, 2005, a superseding indictment was returned that added defendants Dornell Ellis and Robert Calloway (First Sup. Indict't at 7–8). On October 27, 2005, a 95-page second superseding

indictment was returned, which included a total of twelve defendants. Raymon Milburn was a named defendant (2nd Sup. Indict't at 2).

Defendant Milburn was charged with: (1) conspiracy to distribute and possess narcotics in violation of 21 U.S.C. 841(a)(1); (2) conspiracy to participate in a racketeer influenced and corrupt organization in violation of 18 U.S.C. 1962(d); (3) conspiracy to use, carry, and possess firearms during and in relation to a drug conspiracy in violation of 18 U.S.C. 924(o); (4) murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(1); (5) another count of murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(1); (6) conspiracy to murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5); (7) conspiracy to tamper with a witness in violation of 18 U.S.C. 1512(k); (8) another count of conspiracy to murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5); (9) another count of conspiracy to tamper with a witness in violation of 18 U.S.C. 1512(k); (10) using, carrying and possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. 924(c)(1)(A)(i); and (11) another count of using, carrying and possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. 924(c)(1)(A)(i) *id.* at 1–85). Defendant remained a fugitive in this case until he was arrested in March 2007. In the second superceding indictment, the grand jury made special findings against eight defendants, including defendant Milburn, which gave the government grounds to seek the death penalty against them if they were convicted.
*See* 18 U.S.C. 3591(a) (authorizing death penalty).

The government has provided substantial evidence that the Down Below Gang may take violent action against persons cooperating with law-enforcement authorities. Given this danger of attacks on witnesses, the Court authorized the government to redact from documents turned over to defendants and their counsel the names of anyone in danger (Protective Order for Witness Security, Docket No. 470).

**ANALYSIS**

By his motion for a bill of particulars, defendant Milburn seeks greater information about his alleged criminal acts. The movant provides a list of information that he wants the

2

government to provide. He claims that the information sought in this request for a bill of particulars is basic and necessary to an understanding of the specific charges (Br. at 8). Without such information, defendant argues, he will purportedly be deprived of the ability to present an effective defense, the right to confrontation under the Sixth Amendment, and the right to due process under the Fifth Amendment.

A court may direct the government to file a bill of particulars. FRCrP 7(f). The purpose of such relief is to "apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). "These purposes are served if the indictment itself provides sufficient details of the charges and if the Government provides full discovery to the defense." *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984). Decisions on motions for bills of particulars are committed to the trial court's sound discretion. *Tai v. United States*, 273 U.S. 77, 82 (1927). Trial courts' discretion in deciding such motions is particularly broad: an extensive review of reported Ninth Circuit and Supreme Court decisions revealed only one holding that such discretion had been abused, in *Samuel v. United States*, 169 F.2d 787, 791 (9th Cir. 1948). In all other decisions, the district court's order was upheld.

This order now turns to defendant's particular requests.

**1.     WHAT THE GOVERNMENT IS REQUIRED TO PROVIDE.**

**A.     Count One, Overt Act 44/Count Three, Overt Act 33.**

For Count One, Overt Act 44 (which was re-alleged by incorporation under Count Three, Overt Act 33), defendant requests the name of the witness the killing of whom was the purpose of Milburn giving the AK-47 assault rifle to the unindicted co-conspirator (*ibid.*). The indictment does not name the witness. It states, "On an unknown date between August 1, 2004 and November 30, 2004, Raymon Milburn, a/k/a 'Bones,' gave an AK-47 assault rifle to an unindicted co-conspirator for the purpose of killing a witness against Emile Fort, a/k/a 'Twin'" (2nd Sup. Indict't at ¶ 44). There is no point in keeping this name a

3

secret from defendants since Mr. Milburn presumably know whom he tried to kill if the indictment is true. To eliminate guesswork and to pin down which of multiple possibilities Mr. Milburn may have to defend against, the government shall provide this information to defense counsel by private letter. If, however, there is good cause (due to danger from quarters other than defendants), then the government may move promptly to postpone their disclosure, explaining the good cause.

### B. Particulars as to Dealing Narcotics by Mr. Milburn.

Count Two alleged that Mr. Milburn's role in the racketeering conspiracy included selling narcotics (2nd Sup. Indict't at 20). The rest of the indictment made numerous allegations about violent actions taken by Mr. Milburn to support drug dealing. It did not, however, include him among the individuals who sold drugs directly. To the extent the government intends to prove this aspect of Count Two by showing Mr. Milburn personally dealt drugs, it must supply the dates of such sales as well as the types and quantities of drugs sold.

### C. Count Two, Racketeering Act 20/Count Twelve.

According to Count Two of the indictment, "[o]n or about June 25, 2004, within the Northern District of California, Raymon Milburn, a/k/a 'Bones,' Robert Calloway, a/k/a 'Papa,' and Edgar Diaz, a/k/a 'Hook,' committed an act involving murder, that is, they unlawfully killed Kenya Taylor with malice aforethought" (2nd Sup. Indict't at 29). Count Twelve, which charged Mr. Milburn with murder in aid of racketeering, stated the same set of facts (*id.* at 53). To put defendant on proper notice of the allegations against him, the government is required to provide further information. In a short paragraph, the government should describe how Mr. Milburn participated in the murder of Kenya Taylor — *e.g.,* whether he actually pulled the trigger or ordered somebody else to kill the victim. There is, however, sufficient information as to date, location, and cause of death, which can be found in the medical examiner's report and police report for this incident.

4

### D. Count Two, Racketeering Act 21/Count Thirteen.

Mr. Milburn seeks in his motion more particulars regarding Count Two, Racketeering Act 21. The Court assumes that there was an inadvertent error in the motion; although the first request pertains to the murder of *Kenya Taylor*, Count Two, Racketeering Act 21 charged Mr. Milburn with the murder of *Antoine Morgan*. The remaining requests under Count Two, Racketeering Act 21 all correctly refer to Antoine Morgan. The Court will therefore proceed as if defendant had correctly identified Antoine Morgan.

Count Two of the indictment charged Mr. Milburn that, "[o]n or about June 27, 2004, within the Northern District of California, Raymon Milburn, a/k/a 'Bones,' Edgar Diaz, a/k/a 'Hook,' and others committed an act involving murder, that is, they unlawfully killed Antoine Morgan with malice aforethought" (2nd Sup. Indict't at 29). There is a discrepancy because Count Thirteen charged Mr. Milburn and Mr. Diaz with the following: "On or about *September 29, 2004*, in the Northern District of California, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise, an enterprise engaged in racketeering activity, as set forth more fully in Count Two of this Indictment, Raymon Milburn, a/k/a 'Bones,' and Edgar Diaz, a/k/a 'Hook' did unlawfully murder Antoine Morgan" (*id.* at 54) (emphasis added). The government should provide the correct date of Antoine Morgan's murder and describe Mr. Milburn's role in the murder.

### E. Particulars of the Firearm Counts.

Defendant seeks the types and numbers of firearms allegedly possessed by him in connection to a crime of violence. The type of firearm involved can increase the minimum prison term significantly, from five years to ten or thirty years. *See* 18 U.S.C. 924(c)(1)(A)(I) (minimum five-year sentence) and 18 U.S.C. 924(c)(1)(B) (minimum sentences of ten and thirty years, depending on gun type). This information is therefore important to defendant in preparing his case. If the government knows the type of firearms used in Counts Sixty-Nine and Seventy, it should provide that information to defendants.

### 2.  WHAT THE GOVERNMENT IS NOT REQUIRED TO PROVIDE.

The indictment must put Mr. Milburn fairly on notice. The government, however, does not need to lay out its entire evidentiary case. The allegations in the indictment provide ample notice with respect to the rest of defendant's requests such that he can properly prepare his case. Mr. Milburn's requested particulars go beyond what is generally required, and he offers no justification for the government to provide that level of detail.

#### A.  Names.

Mr. Milburn asks for an order compelling the government to provide the names of various unindicted co-conspirators or witnesses. The names of witnesses in this action are closely guarded secrets that protect them from potential retaliation and violence. This category, "witnesses," includes, of course, all conspirators. To the extent that defendants' requests seek names that are properly withheld pursuant to the Court's previous orders, the requests must be denied. Furthermore, it is not an abuse of discretion to deny requests to know the names of conspirators if the names of a sufficient number of conspirators have been revealed to sustain the charges. *United States v. Burt*, 765 F.2d 1364, 1367 (9th Cir. 1985). Such is the case here. This request therefore is denied.

#### B.  Locations.

Mr. Milburn makes various requests for specific locations. To name a few, he seeks each location where he and others allegedly conspired, "stash" locations, where he gave orders to murder individuals, and where weapons were given or received. This information is too specific to require. The indictment provides sufficient notice of location.

All the acts are alleged to have taken place in the Northern District of California. For Count One, the indictment stated that the locations at which members of the conspiracy conducted their illegal narcotics business included generally San Francisco, "but with specific emphasis on the area in and around the Sunnydale public housing complex, in San Francisco's Visitacion Valley neighborhood, including, but not limited to, an area bounded by Hahn Street to the East, Brookdale Street to the West, Sunnydale Avenue to the North and Blythedale Street

6

to the South" (2nd Sup. Indict't at 4). As to Count Two, the indictment pointed to the Northern District of California, "particularly in the Visitacion Valley neighborhood in the City and County of San Francisco and elsewhere" (*id.* at 16). The locations in Count Three were the same as the locations in Count One. For the murder, conspiracy to commit murder, conspiracy to tamper with a witness, firearms counts, Counts Twelve through Fifteen, Twenty-Seven, Twenty-Eight, Sixty-Nine, and Seventy, the indictment referred to the Northern District of California. To the extent defendants seek more information, these requests are denied; the information is too detailed, not within the typical knowledge of the government, and might limit the government unfairly.

**C.     Dates.**

Defendant requests specific dates. He is not entitled to the exact dates, such as when he or alleged conspirators became members of the conspiracies, when he met or communicated with co-conspirators. These details are generally not within the government's knowledge. To require this information, and potentially to limit the proof to that time, would hamper prosecutions unnecessarily. *Rubio v. United States*, 22 F.2d 766, 767–68 (9th Cir. 1927). In any case, the conspiracy counts are replete with dates. The periods during which the conspiracies existed are alleged in the complaint. As to the second count, the dates of each conspirator's membership are alleged. So are the dates of each of the seventy-three overt acts in Count One and each of the fifty-seven overt acts in Count Three. Most of the thirty racketeering acts alleged in Count Two also have specific dates attached to them. These dates put defendants on adequate notice of the dates of the conspiracy they allegedly joined.

Defendant also asks for the dates on which his participation in the conspiracies ended, if ever. Just as information as to the exact dates of a person joining a conspiracy is too detailed and is unlikely to be held by the government, so too is information about when they left the conspiracy. The request is denied.

7

### D. Particulars of the Conspiracy Counts.

Mr. Milburn requests particulars of the conspiracy counts, such as the different roles played by each defendant and their different tasks, subscriber information, and the specifics of "call signs." This order finds that the indictment provided sufficient detail with respect to these requests; it described the members, the goals of the conspiracies, the ways, manner and means to accomplish the conspiracies, and the overt acts. Defendant's request is over-broad. For example, he requests that the government "[i]dentify all acts of violence allegedly committed by the defendants and their co-conspirators in furtherance of the conspiracy that are not identified as an overt act in the indictment" and "all efforts undertaken by the defendants and their conspirators — other than those already detailed in the indictment — to avoid detection, investigation, and conviction" (Br. at 10). Mr. Milburn makes no argument as to how knowing all of these additional facts will help him prepare for his defense. Many of these requests are unreasonably burdensome on the government. The request is denied.

### CONCLUSION

For the reasons stated, the motion for a bill of particulars is **DENIED** except on the following points:

1. With respect to Count One, Overt Act 44/Count Three, Overt Act 33, unless the government moves to postpone the disclosure and provides good cause, the government must identify the name of the witness.

2. With respect to Count Two, if the government intends to prove the narcotics-dealing allegations against Mr. Milburn by showing that he dealt drugs directly, it must supply the dates   of such sales as well as the types and quantities of drugs sold.

3. With respect to Count Two, Racketeering Act 20/Count Twelve, the government should provide further details on how Mr. Milburn participated in the unlawful killing of Kenya Taylor.

4. With respect to Count Two, Racketeering Act 21/Count Thirteen,

       the government should provide the correct date of Antoine Morgan's murder and how Mr. Milburn participated in the murder.

5. With respect to Counts Sixty-Nine and Seventy, if the government knows the types of firearms used in the crimes of violence, it should provide that information.

**IT IS SO ORDERED.**

Dated: October 22, 2007.

                                            WILLIAM ALSUP
                                            UNITED STATES DISTRICT JUDGE